UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
RASHEEN TAMEL MASON,

Plaintiff,

- against -

**MEMORANDUM & ORDER**
26-CV-1817 (PKC) (VMS)

CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF HOMELESS SERVICES; NEW YORK CITY HUMAN RESOURCES ADMINISTRATION; NEW YORK CITY POLICE DEPARTMENT; SAMARITAN DAYTOP VILLAGE,

Defendants.
-----------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Rasheen Tamel Mason filed this action *pro se* in the United States District Court for the Southern District of New York on December 12, 2025. (*See* Compl., Dkt. 1.) On January 22, 2026, the Southern District granted Plaintiff's request to proceed *in forma pauperis*, (Dkt. 8), and, on March 18, 2026, transferred the action to this Court, (Dkt. 16).[1] On May 19, 2026, the Court *sua sponte* dismissed the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), but granted Plaintiff leave to file an amended complaint within 30 days. (Dkt. 21.) On June 4, 2026, Plaintiff filed his Amended Complaint. (Am. Compl., Dkt. 25, at ECF[2] 1.) For the reasons that follow, the Court again *sua sponte* dismisses the Amended Complaint for failure to state a claim on which

[1] On March 23, 2026, after the transfer was effectuated, Plaintiff filed an interlocutory appeal of the transfer order. (*See* Dkt. 17.) On August 5, 2026, the Second Circuit dismissed the appeal for lack of jurisdiction since "the district court ha[d] not issued a final order as contemplated by 28 U.S.C. § 1291." Order, *Mason v. City of New York*, No. 26-755 (2d Cir. Aug. 5, 2026), Dkt. 23.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), but grants Plaintiff leave to file a Second Amended Complaint as to certain of his claims.

## BACKGROUND

Plaintiff's Amended Complaint names as Defendants the City of New York (the "City"); several agencies of the City, including the Department of Homeless Services ("DHS"), Human Resources Administration ("HRA"), and the New York City Police Department ("NYPD"); and non-profit shelter provider Samaritan Daytop Village ("Samaritan Village"). (Am. Compl., Dkt. 25, at 1.)

Plaintiff brings claims against these defendants that arise from three distinct circumstances. First, he brings claims relating to living conditions at three shelter facilities operated by Samaritan Village (the "Shelters"), alleging, among other things, inadequate access to meals and electricity. (*Id.* ¶¶ 1–3, 5–8, 11, 14.) Second, he brings claims arising out of alleged involuntary psychiatric commitments while residing at the Shelters. (*Id.* ¶¶ 4, 9, 12.) Third, and distinct from any claims in connection with Samaritan Village, Plaintiff brings claims arising out of his alleged arrest by the NYPD at a subway station. (*Id.* ¶ 10.)

### I. Inadequate Food and Shelter Claims

Between November 2024 and March 2026, due to economic hardship, Plaintiff resided at the following three Shelters: (1) Samaritan Village Men's Shelter located at 5113 Second Avenue, Brooklyn, NY 11220, (*id.* ¶¶ 1, 3–4); (2) Samaritan Village's facility located at 988 Myrtle Avenue, Brooklyn, NY 11206, (*id.* ¶¶ 7, 11) ; and (3) an unidentified facility where Plaintiff was temporarily housed, (*id.* ¶ 11). As of November 2024, Plaintiff was also receiving $291 in Supplemental Nutrition Assistance Program ("SNAP") benefits and $91 in cash assistance, monthly. (*Id.* ¶ 2.) Plaintiff is a vegetarian. (*Id.* ¶ 1.) Plaintiff generally alleges three issues in connection with living conditions at the Shelters.

First, he alleges a "lack of access to shelter-provided meals" and a "fail[ure] to provide adequate meals." (*Id.* ¶¶ 1–2.) Specifically, he alleges that he was "not . . . provided with vegetarian meals." (*Id.* ¶ 5.) He claims that Samaritan Village "staff were aware of his dietary needs and refused to take corrective action." (*Id.* ¶ 3.) Plaintiff "repeatedly informed" Samaritan Village Case Managers McTiernan[3] and Dickson that he was not being provided with vegetarian meals. (*Id.* ¶ 5, 8.) He also informed Samaritan Village Program Director Barlow of his nutritional concerns. (*Id.*) On November 26, 2024, Samaritan Village Assistant Program Director Vera allegedly stated "directly to Plaintiff" that he was "going to continue to starve." (*Id.* ¶ 3.)

In April 2025, Plaintiff attempted to raise his nutritional concerns once again in advance of his transfer to another Samaritan Village facility located at 988 Myrtle Avenue, Brooklyn, NY 11206. (*Id.* ¶ 7.) He alleges that he spoke by telephone with Mr. Figueroa, the Samaritan Village Program Director of the Myrtle Avenue location. (*Id.*) Plaintiff states that before he could fully explain his concerns around "lack of access to food," Figueroa "interrupted" to tell Plaintiff that the transfer was "for housing purposes only." (*Id.*) Figueroa then terminated the call. (*Id.*)

Second, Plaintiff alleges that on one occasion he experienced symptoms "consistent with suspected food contamination" after eating a Samaritan Village-provided meal. (*Id.* ¶ 6.) He claims that he experienced "physical symptoms" such as "abnormal vomiting, severe abdominal pain and inability to consume food for approximately one week." (*Id.*)

Third, Plaintiff alleges harm in connection with a loss of electricity at the Shelters on two occasions. (*Id.* ¶¶ 8, 11.) First, Plaintiff alleges that in June 2025 electrical outlets "on the fourth floor of the shelter" became "nonfunctional." (*Id.* ¶ 8.) Second, he alleges that, on January 20,

[3] Plaintiff does not provide the first names of some of the Samaritan Village employees referenced in the Amended Complaint, while the Court omits others as unnecessary.

2026, a fire occurred at the Shelter where he was staying as a result of a circuit breaker failure during an extreme cold weather advisory in New York City. (*Id.* ¶ 11.) The incident occurred at approximately 11:00 p.m., "resulting in a loss of electricity throughout the building, including the absence of heat during freezing weather conditions." (*Id.*) The Fire Department responded to the incident after a 911 call. (*Id.*) Plaintiff was relocated to a temporary shelter at 5 a.m. that same night. (*Id.*)

Distinct from his claims relating to shelter conditions, Plaintiff also alleges that his City-administered SNAP and cash assistance benefits were "insufficient to meet his basic nutritional needs." (*Id.* ¶ 2.) He claims he would exhaust his benefits within two to three weeks of the month-long period they were intended to cover. (*Id.*) He does not allege facts indicating that he exhausted administrative procedures available to him to challenge his benefits determination, nor does he allege that any state procedures were inadequate to challenge any adverse determination with respect to his benefits.

## II. Involuntary Psychiatric Evaluation and Hospitalization Claims

Plaintiff alleges that in response to his repeated nutritional demands, staff at Samaritan Village "retaliat[ed]" against him by improperly referring him for psychiatric evaluation and involuntary hospitalization. (*Id.* ¶¶ 4, 6, 12.) He alleges that he was psychiatrically evaluated on three separate occasions. (*Id.* ¶¶ 4, 9, 12.)

First, he alleges that, on December 18, 2024, Samaritan Village staff took him for a psychiatric evaluation at NYU Langone Hospital in Brooklyn. (*Id.* ¶ 4.) He alleges that this was done "out of retaliation" and that it was "unjustified" and without "evidence or cause." (*Id.*) He states that he was released from the hospital "within an hour with no physical findings or diagnosis." (*Id.*)

Plaintiff further claims that when he complained of food contamination in February 2025, Samaritan Village staff "threatened" to characterize him as "mentally unstable" and subject him to "involuntary hospitalization" if he attempted to report the incident. (*Id.* ¶ 6.) He contends that this conduct created an environment in which his complaints could be disregarded "without proper review," thereby "preventing accountability." (*Id.*)

Second, he claims that, on November 7, 2025, he was subjected to a psychiatric evaluation once again, this time by a nurse retained by Samaritan Village. (*Id.* ¶ 9.) He raises several procedural due process claims concerning the evaluation, challenging the adequacy of its "procedural safeguards," "transparency," and "documentation." (*Id.*) He also mentions having submitted "numerous complaints to various oversight agencies, including Disability Affairs, the New York City Department of Social Services, and the Ombudsman's Office" regarding the alleged impropriety of these evaluations. (*Id.*)

Third, Plaintiff alleges that, on March 27, 2026, he was "involuntarily hospitalized" and remained in the hospital for approximately three weeks, until April 20, 2026. (*Id.* ¶ 12.) Again, Plaintiff alleges several due process claims. (*Id.*) He states that the NYPD officers who facilitated his removal from the Shelter to the hospital did not present him with documentation authorizing the removal. (*Id.*) Plaintiff states that his hospitalization was not medically warranted. (*Id.*) He claims that "he did not experience hallucinations, did not hear voices, and did not pose a danger to himself or others." (*Id.*) Plaintiff maintains that his hospitalization was instead "retaliation for [his repeated] complaints and this lawsuit." (*Id.*)

At the hospital, Plaintiff claims he was administered various antipsychotic medications "against his will." (*Id.*) He alleges that these medications "caused severe adverse effects," including "severe dizziness," "muscle stiffness," "fatigue," "sensitivity to light," "cognitive

impairment," "depression," "anxiety," "involuntary bodily movements," and "suicidal thoughts" that he did not experience prior to being medicated. (*Id.*) Plaintiff alleges violations of his constitutional rights and bodily autonomy as a result. (*Id.*)

### III. "False" Arrest Claim

Unrelated to his other claims, Plaintiff alleges "false arrest" by NYPD officers on January 1, 2026. (*Id.* ¶ 10.) Plaintiff states that, on January 1, 2026, he was attacked by another individual with a "knife" and then with a "heavy-duty lock" at the Flushing Avenue G subway stop. (*Id.*) Plaintiff alleges that he responded to this attack in "self-defense" by "disarm[ing]" and "restrain[ing]" the attacker. (*Id.*) He was arrested following the incident and "charged with misdemeanor assault and obstruction of breathing." (*Id.*) He maintains that the officers "lacked probable cause and therefore violated his constitutional rights." (*Id.*)

### IV. Procedural Background

Plaintiff filed this action *pro se* in the United States District Court for the Southern District of New York on December 12, 2025. (Compl., Dkt. 1.) On January 22, 2026, the Southern District granted Plaintiff's request to proceed *in forma pauperis*, (Dkt. 8), and, on March 18, 2026, transferred the action to this Court, (Dkt. 16). On May 19, 2026, this Court *sua sponte* dismissed the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), finding that Plaintiff had failed to state colorable claims and that many of his allegations were frivolous and irrational, including his insistence that "everyone is blood," he is "God," and that Defendants ought to be tortured and killed. (Dkt. 21.) The Court, however, granted Plaintiff leave to amend his claims related to the alleged involuntary hospitalizations and recent arrest. (*Id.*) The Court specified that, if Plaintiff were to amend his Complaint, he should specify the physical descriptions and details of what the defendants did or failed to do in violation of his civil rights. (*Id.*) On June 4, 2026, Plaintiff filed an Amended Complaint, (Am. Compl., Dkt. 25), the sufficiency of which the Court considers here

pursuant to 28 U.S.C. § 1915(e)(2)(B). Since filing his Amended Complaint, Plaintiff has submitted two additional filings: a letter largely reiterating his claims for the provision of vegetarian meals, (Dkt. 27), and providing the results from a New York City Police Officer Examination dated November 2, 2021, (Dkt. 28), for which no further context is offered.

## LEGAL STANDARD

As Plaintiff is proceeding *pro se*, the Amended Complaint is held to less stringent standards than pleadings drafted by lawyers, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and the Court is obliged to construe the pleadings liberally and to "interpret them as raising the strongest arguments they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a district court shall dismiss an *in forma pauperis* action where the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). However, if a liberal reading of a complaint "gives any indication that a valid claim might be stated," a court must grant leave to amend. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

## DISCUSSION

### I. Plaintiff's Food and Shelter Claims

Litigants may pursue constitutional claims in federal court pursuant to 42 U.S.C. § 1983 ("Section 1983"), which requires that a plaintiff demonstrate that the challenged conduct was "committed by a person acting under color of state law" and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). The statute "creates no substantive rights; it merely provides remedies

for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (citation omitted). To bring a claim pursuant to Section 1983, a plaintiff must show that each of the named defendants was personally involved in the complained-of wrongdoing or misconduct. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

### A. Samaritan Village is Not a State Actor and Cannot Be Sued Under Section 1983

Plaintiff cannot bring Section 1983 claims against Samaritan Village, a private organization, as Section 1983 does not apply to harms caused by private individuals or organizations. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citations omitted)). In some limited cases, however, a Section 1983 claim may be brought against private parties, where, for example, the private party is engaged in a "public function" or performs conduct that is "fairly attributable to the state."[4] *Id.* at 50–55. Nevertheless, the public function exception is limited. The Supreme Court has made clear that "the relevant question is not simply whether a private group is serving a 'public function.' . . . [T]he question is whether the function performed has been 'traditionally the *exclusive* prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)).

[4] The other two situations in which private actions may be considered state actions are where (1) "the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test')" or (2) "the joint action" or "close nexus" test—"when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). Here, Plaintiff's factual allegations do not suggest a colorable argument that Samaritan Village could qualify as a state actor under either test.

Here, Samaritan Village is a private organization that provides social services, including housing. A court in this District recently addressed this same state actor issue as to Samaritan Village and held that it is not a private organization "performing a public function sufficient to turn [Samaritan Village] or its employees into state actors for purposes of [Section] 1983 liability" because providing shelter is neither a constitutional obligation nor the exclusive prerogative of the state. *Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter*, No. 18-CV-5995 (KAM) (RER), 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020); *see also Reaves v. Dep't of Veterans Affs.*, No. 08-CV-1624 (RJD), 2009 WL 35074, at *3 (E.D.N.Y. Jan. 6, 2009), *as corrected* (Jan. 14, 2009) ("[T]he provision of homeless services by a private organization, even under contract with the state or where subject to governmental regulation, does not turn the private organization or its employees into state actors." (citing *Rendell-Baker*, 457 U.S. at 842)). Although New York City has chosen to provide homeless services, and city and state agencies regulate housing conditions and facilitate access to housing, access to shelter is not a constitutional right, nor is there any government obligation to provide adequate housing. *See Reaves*, 2009 WL 35074, at *3 (citing *Lindsey v. Normet*, 405 U.S. 56, 74 (1972)). Indeed, shelter access is a right over which local authorities exercise "broad discretion." *Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 512 (S.D.N.Y. 2009), *aff'd*, 391 F. App'x 81 (2d Cir. 2010). Accordingly, New York City's "legislative policy choice in no way makes these services the exclusive province of the State," and the public function exception does not apply. *See Ortega*, 2020 WL 1043305, at *4 (citing *Rendell-Baker*, 457 U.S. at 842). Plaintiff therefore cannot show that, in providing housing to Plaintiff, Samaritan Village was performing a public function sufficient to turn the Shelters or its employees into state actors for purposes of Section 1983 liability. Accordingly, Plaintiff cannot

bring a federal lawsuit under Section 1983 or otherwise against Samaritan Village or any of its employees based on the alleged inadequacy of food or shelter it provided to him.

**B. Plaintiff Fails to State Any Constitutional Violations by the Unidentified Individual Defendants**

Although Plaintiff has named only New York City entities, not individuals, as defendants in his Amended Complaint, he nevertheless asserts as a cause of action "violations" by "[i]ndividual [d]efendants" whom he does not name. (Am. Compl., Dkt. 25, at ECF 6.) Therefore, in liberally construing Plaintiff's *pro se* Amended Complaint, the Court considers the potential liability of any individuals with whom Plaintiff allegedly interacted with respect to his food and shelter claims in the Amended Complaint.

Even if Plaintiff could identify these individuals, any claims against them for allegedly not providing adequate food and shelter would fail. A successful Section 1983 claim requires that defendants violated plaintiff's constitutional rights, *see Ultegra LLC v. Mystic Fire Dist.*, 676 F. App'x 33, 35 (2d Cir. 2017) (summary order) (holding that under Section 1983, a plaintiff must "show that the defendant violated a constitutional right" (citing *Matican v. City of N.Y.*, 524 F.3d 151, 154 (2d Cir. 2008))), but here Plaintiff complains of inadequate access to food and shelter, to which there is no constitutional right.

In the context of homeless shelters, there is no constitutional right to food, much less to a particular kind of food or food quality. *See Reaves*, 2009 WL 35074, at *3 ("Access to food and shelter is not a constitutional right." (citing *Lindsey*, 405 U.S. at 74)); *Lindsey*, 405 U.S. at 74 ("[T]he Constitution does not provide judicial remedies for every social and economic ill."); *Rodriguez v. HASA HRA*, No. 24-CV-6451 (LTS), 2025 WL 1122529, at *6 n.4 (S.D.N.Y. Apr. 14, 2025) (dismissing plaintiff's Section 1983 claims "arising from a violation of a purported right . . . to food"); *Jones v. Banks*, No. 20-CV-6788 (LLS), 2020 WL 5038696, at *2 (S.D.N.Y.

Aug. 26, 2020) (finding plaintiff failed to state a claim based on shelter's failure to provide "clean, fresh, local food"); *Bea v. Atl. Ave. Assesstment* [sic] *Shelter*, No. 19-CV-3184 (PKC) (RML), 2019 WL 2568019, at *2 (E.D.N.Y. June 20, 2019) (finding that shelter's provision of expired food did not rise to the level of a constitutional violation); *Al-Qadaffi v. Acacia Network*, No. 16-CV-05423 (BMC) (RLM), 2016 WL 6072374, at *4 (E.D.N.Y. Oct. 17, 2016) ("[T]here is simply no federal law, judicial holding, or constitutional provision that guarantees an individual the right to halal food in a treatment program at a *homeless shelter*." (emphasis added)). Relatedly, although Plaintiff attempts to invoke Eighth Amendment standards with respect to his food and shelter claims, (Am. Compl., Dkt. 25, ¶¶ 1, 3, 11), "[t]he Eighth Amendment, which prohibits the infliction of 'cruel and unusual punishments,' only applies to convicted individuals who are in custody," *Fashaw v. New York*, No. 21-CV-02336 (LTS), 2021 WL 1999732, at *4–5 (S.D.N.Y. May 17, 2021). Here, "[b]ecause Plaintiff was not a prisoner or in criminal custody when he was in the shelter system, the deliberate indifference standard does not apply to his allegations arising . . . from his experiences in shelters." *See id.*[5]

For similar reasons, Plaintiff's claims regarding the loss of electricity and heat in the Shelters fail. *See Carter v. City of New York*, No. 13-CV-1839 (RA), 2014 WL 4953641, at *3 (S.D.N.Y. Sept. 30, 2014) ("[A] local agency's failure to remedy potentially hazardous living conditions [in a homeless shelter] does not amount to a substantive due process violation." (citing *Allen v. N.Y.C. Hous. Auth.*, 10-CV-0168 (CM)(DF), 2012 WL 4794590, at *7 (S.D.N.Y. Sept. 11, 2012))); *Joseph v. Row Hotel*, No. 21-CV-1691 (PKC) (PK), 2021 WL 2400948, at *4 (E.D.N.Y. June 11, 2021) ("Although the Court recognizes the difficulty of Plaintiff's

[5] Plaintiff does allege involuntary hospitalization but does not attribute any of his claims of inadequate food to that alleged period of involuntary commitment.

circumstances, the Constitution does not impose a duty of care where, as here, Plaintiff was not in custody against his will and was free to leave any of the shelters."); *Richardson*, 2013 WL 2124176, at *2 (dismissing plaintiff's claims taking issue with shelter conditions, including limited access to electricity, because he had no recognized right to access to food and shelter).

For all the reasons stated above, Plaintiff's alleged procedural violations with respect to the inadequacy of food and shelter also fail. "The threshold question for a due process claim 'is always whether the plaintiff has a property or liberty interest protected by the Constitution.'" *Cmty. Recovery Found., Inc. v. Clarke Thomas Men's Shelter*, No. 23-CV-6965 (LTS), 2023 WL 6622749, at *3 (S.D.N.Y. Oct. 11, 2023) (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). Since Plaintiff has established no constitutionally protected interest in access to food or shelter, he cannot enforce any procedural due process rights with respect to those interests. *See id.* There is also "no property right under New York law to placement in a particular type of shelter." *See id.* (citing *Jenkins*, 643 F. Supp. 2d at 512).[6] Although there is "a general right to shelter in New York, the right to shelter is not a 'boundless . . . entitlement' and may be subject to eligibility requirements and other limitations." *Jenkins*, 643 F. Supp. 2d at 512 (citing *Callahan v. Carey*, 762 N.Y.S.2d 349, 351 (1st Dept. 2003)). And "[a]n interest that state law permits to be terminated at the whim of another person is not a property right that is protected by the Due Process Clause." *Richardson*, 2013 WL 2124176, at *2 (citing *White Plains Towing Corp. v. Patterson*,

[6] Plaintiff's claims of "discarded" or "improperly retained" personal belongings by shelter staff fail for similar reasons. *See Jallow v. Geffner*, No. 23-CV-3969 (LTS), 2024 WL 37073, at *12 (S.D.N.Y. Jan. 2, 2024) ("Plaintiff's allegations about being sent to undesirable shelters where his property was stolen do not state a federal claim because there is no due process right to placement in a particular type of shelter under federal law or New York law."); *see also Calderon v. City of New York*, No. 24-CV-4631 (VEC) (KHP), 2025 WL 2336439, at *6 (S.D.N.Y. June 6, 2025), *report and recommendation adopted*, 2025 WL 1874671 (S.D.N.Y. July 8, 2025) (finding no property interest in the ability to come and go from a shelter "with or without [one's] belongings").

991 F.2d 1049, 1061–62 (2d Cir. 1993)). Accordingly, Plaintiff cannot assert a claim to "placement in a particular type of shelter" as a matter of procedural due process. *See id.*

**C. SNAP Benefits**

Plaintiff also alleges that his New York City-administered benefits, including SNAP and cash assistance, were "insufficient to meet his basic nutritional needs." (Am. Compl., Dkt. 25, ¶ 2.) Since Plaintiff does not allege facts indicating that state procedures were insufficient for challenging his SNAP or cash assistance benefits, he has no colorable federal claim. "New York State law provides public assistance applicants remedies to challenge the denial of benefits, including fair hearings under N.Y. Soc. Serv. Law § 22 and 18 N.Y.C.R.R. § 358, as well as Article 78 proceedings. These procedures have been found to be constitutionally sufficient to challenge adverse determinations in connection with government entitlement programs." *Carter v. Jenkins*, No. 22-CV-10326 (LTS), 2023 WL 3258482, at *4 (S.D.N.Y. May 4, 2023) (collecting cases); *see also Thompson v. Welfare*, No. 25-CV-5359 (LLS), 2025 WL 2577983, at *3 (S.D.N.Y. Sept. 4, 2025) (finding state procedures to be constitutionally sufficient for SNAP benefits as well as cash assistance). Since Plaintiff does not allege that any state procedures were inadequate to challenge an adverse determination with respect to his receipt of SNAP or any other cash assistance benefits, the Amended Complaint does not state a colorable procedural due process claim as to the inadequacy of his public benefits. *See Sibble v. Hum. Res. Admin.*, No. 22-CV-5603 (LTS), 2023 WL 7019113, at *3 (S.D.N.Y. Oct. 24, 2023) (holding that since plaintiff did not allege that any state procedures were inadequate to challenge his public assistance benefits determinations, he failed to state a Section 1983 procedural due process claim).

### D. Plaintiff Cannot Allege a Colorable *Monell* Claim Against Defendant City of New York or its Agencies

A municipality can be liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Lozman v. Riviera Beach*, 585 U.S. 87, 95 (2018) ("It is well established that in a [Section] 1983 case a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))). Thus, to state a *Monell* claim, a plaintiff must sufficiently allege: (1) a deprivation of his constitutional rights; and (2) a municipal policy or custom causing that deprivation. *See Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020).

Regarding the second element, proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *See Tuttle*, 471 U.S. at 823–24. "To satisfy this requirement, 'general and conclusory allegation[s]' of an unconstitutional policy or custom are insufficient." *Swinton v. Livingston County*, No. 21-1434, 2023 WL 2317838, at *1 (2d Cir. Mar. 2, 2023) (summary order) (alteration in original) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's Section 1983 claims pursuant to 28 U.S.C. § 1915(e)(2)(B) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015))). "Rather, a plaintiff must identify either an 'express rule or regulation,' a practice that 'was so persistent or widespread as to [carry] the force of law,' or misconduct of 'subordinate employees' that 'was so manifest as to imply the constructive acquiescence of senior policy-making officials.'" *Id.* A plaintiff must also establish "a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional

rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (quoting *Tuttle*, 471 U.S. at 809).

First, Plaintiff's *Monell* claim with respect to the alleged failure to provide adequate food or shelter fails because, as discussed above, he has not sufficiently pled any constitutional violation on that basis. Second, despite asserting that the alleged constitutional violations "were caused by policies, practices, or customs" of the City agencies named in the Amended Complaint, (Am. Compl., Dkt. 25, at ECF 6), Plaintiff does not allege any specific facts to support this assertion. (Am. Compl., Dkt. 25, at ECF 6). Even at the pleading stage, "[t]he mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403–04 (2d Cir. 2018) (citing *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)); *see also Gross v. Johnson*, No. CV 24-1722 (GRB) (AYS), 2025 WL 2722319, at *8 (E.D.N.Y. June 30, 2025) (applying this rule even to a "liberally construed" *pro se* complaint); *Campbell v. Broome Cnty.*, 173 F.4th 36, 42–43 (2d Cir. 2026) (affirming district court's dismissal of *pro se* plaintiff's amended Section 1983 claims with respect to municipal defendants for failure to sufficiently plead policy or custom). Here, Plaintiff has not only failed to allege specific facts to support his assertion about the existence of a policy or custom, but his allegations suggest that he cannot. *See id.* Therefore, all claims against the City and its subdivisions must fail.[7]

[7] As noted in the Court's Memorandum & Order dismissing Plaintiff's original Complaint, subdivisions of New York City do not have separate legal identities and cannot be named in lawsuits. *See Nnebe v. Daus*, 644 F.3d 147, 158 n.6 (2d Cir. 2011) ("It is well settled in this Court that, as a general matter, agencies of New York City are not suable entities in [Section] 1983

## II. False Arrest Claim

### A. Section 1983 Liability as to Individual NYPD Officers

As previously stated, Plaintiff has named only New York City entities, not individuals, as defendants in his Amended Complaint. He nevertheless asserts as a cause of action "violations" by "[i]ndividual [d]efendants" whom he does not identify. (Am. Compl., Dkt. 25, at ECF 6.) Therefore, in liberally construing Plaintiff's *pro se* Amended Complaint, the Court considers the potential liability of individual NYPD officers with whom Plaintiff allegedly interacted in the course of his January 2026 arrest. (*See id.* ¶ 10.)

Section 1983 claims for false arrest "derive[] from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006). "A [Section] 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). New York law, in turn, "requires that the plaintiff show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Id.* (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). An arrest is "privileged" if it is based on probable cause because probable cause is a complete defense to a false arrest claim. *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022); *see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The existence of probable cause to arrest . . . will defeat a claim of false arrest under the Fourth Amendment."). "The burden of establishing the absence of probable cause

---

actions."). Therefore, the Court does not separately address the claims as against the subdivisions of New York City.

rests on the plaintiff." *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220 (E.D.N.Y. 2007); *see also Hughes v. Lebron*, No. 14-CIV-9479 (PAE), 2016 WL 5107030, at *7 (S.D.N.Y. Sept. 19, 2016).

Probable cause exists where officers have "reasonably trustworthy information" as to "facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Ackerson*, 702 F.3d at 19 (citing *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). "The central inquiry is 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Sullivan v. City of New York*, No. 17-CV-3779 (KPF), 2018 WL 3368706, at *5 (S.D.N.Y. July 10, 2018) (quoting *Ackerson*, 702 F.3d at 19).

Furthermore, to "establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show . . . the defendant's *personal involvement* in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (emphasis added) (collecting cases). Accordingly, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Here, as an initial matter, Plaintiff has not sufficiently distinguished the activities of each officer with whom he interacted on January 1, 2026. *See Etuk v. City of New York*, No. 24-CV-4957 (KPF), 2026 WL 366763, at *6 (S.D.N.Y. Feb. 10, 2026) (finding that broad allegations against "NYPD officers" as a group failed to establish individual liability under Section 1983); *see also Griffin v. Kings Cnty. Dist. Attorney's Off.*, No. 20-CV-2387 (AMD) (LB), 2020 WL 5211049, at *4 (E.D.N.Y. Aug. 31, 2020) (finding that plaintiff must specify what each individual officer personally "did to the plaintiff"). Here, Plaintiff does not attribute actions or statements to

individual officers. (*See* Am. Compl., Dkt. 25, ¶ 10.) Instead, Plaintiff "lumps together" the conduct of the officers against whom he brings suit. *See Etuk*, 2026 WL 366763 at *6. His Amended Complaint therefore fails to state a Section 1983 claim against the unnamed NYPD officers.

Second, Plaintiff has at most alleged facts supporting the first three elements of a false arrest claim: the officers intended to confine him, he was conscious of his confinement, and he did not consent to the confinement. *See* (Am. Compl., Dkt. 25, ¶ 10); *Keenan v. Pav*, No. 21-CV-6928 (JS)(JMW), 2025 WL 964306, at *8 (E.D.N.Y. Mar. 31, 2025) (finding that plaintiff's allegations of arrest and lack of consent to the arrest satisfied the first three elements of a false arrest claim (citing *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003))), *reconsideration denied*, 2025 WL 1114626 (E.D.N.Y. Apr. 15, 2025). Plaintiff fails to allege facts to support an inference that the fourth element—that Plaintiff's confinement was not otherwise privileged—is met. The Amended Complaint does not include information supporting a lack of probable cause. He has not claimed that there was any information demonstrating the absence of probable cause that "was, or should have been, known to the officers" at the time of the arrest. *See Newson v. City of New York*, No. 16-CV-6773 (ILG) (JO), 2019 WL 3997466, at *11 (E.D.N.Y. Aug. 23, 2019) (dismissing claims where "[p]laintiff ha[d] not pleaded sufficient facts from which the absence of probable cause may be inferred"); *see also Smalls v. Doe*, No. 06-CV-0302 (ARR), 2006 WL 270253, at *2 (E.D.N.Y. Feb. 1, 2006) (finding a claim for false arrest insufficient without "alleg[ing] whether he was convicted of the charges or whether the charges were dismissed"). He merely claims in conclusory fashion that he was "acting solely in self-defense" and that, as a result, his arrest was not warranted. (Am. Compl., Dkt. 25, ¶ 10.) He has not specified "what, if anything, was said between [him] and the officers," *see Newson*, 2019 WL 3997466, at *11, or what the

officers reasonably would have known about the incident. Should Plaintiff seek to again amend his pleadings, the Court directs him to state with as much specificity as possible what acts and statements each individual officer directed towards him. Specifically, Plaintiff is directed to include allegations as to what the officers knew or should have known at the time of the arrest that could defeat the claim of probable cause.[8] Additionally, Plaintiff shall allege "a description of any subsequent proceedings concerning the arrest and the date the charges were dismissed or the date he was convicted." *See Smalls*, 2006 WL 270253, at *2.

### B. Plaintiff Cannot Allege a Colorable *Monell* Claim Against Defendant City of New York or its Agencies Based on His False Arrest Claim

A municipality can be liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Lozman*, 585 U.S. at 95. Again, as with his food and shelter claims, Plaintiff has failed to sufficiently allege both a constitional violation, i.e., false arrest, and the existence of a policy or custom behind the

[8] In his Amended Complaint, Plaintiff attempts to bring two additional claims in connection with the events that he alleges to have occurred on January 1, 2026 and to have resulted in a false arrest. Both are without merit.

First, he makes a vague gesture at a claim for malicious prosecution following the alleged arrest. He states in conclusory fashion that he was "wrongfully subjected to . . . prosecution by NYPD officers." (Am. Compl., Dkt. 23, ¶ 10.) To bring a malicious prosecution claim under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). To the extent Plaintiff attempts to bring a malicious prosecution claim, it fails because he has not sufficiently alleged facts to support the latter three elements.

Second, Plaintiff attempts to bring an Equal Protection claim arising out of the same arrest. To state a claim for an equal protection violation, a plaintiff must allege facts indicating the existence of similarly situated comparators. *See Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated.") Plaintiff does not identify any similarly situated comparators, so the claim is meritless.

incident of false arrest that he alleges to have occurred on January 1, 2026. (*See* Am. Compl., Dkt. 25, ¶ 10.) Furthermore, nothing in Plaintiff's Amended Complaint suggests that he could allege a policy or custom if granted leave to amend a second time. Therefore, for the reasons discussed in further detail above, Plaintiff fails to state a claim against the City with respect to his alleged false arrest.

## III. Involuntary Psychiatric Evaluation and Hospitalization Claims

### A. Claims Against Samaritan Village Fail

Since Section 1983 does not apply to harms caused by private individuals or organizations, *see Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50, as explained above, Samaritan Village and its employees cannot be held liable for any constitutional claims Plaintiff attempts to bring with respect to his psychiatric evaluations and hospitalizations. Plaintiff's mental health-related claims against Samaritan Village and its employees therefore must be dismissed.

### B. Plaintiff Cannot Allege a Colorable *Monell* Claim Against Defendant City of New York or its Agencies Based on His Mental Health Treatment Claims

A municipality can be liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Lozman*, 585 U.S. at 95. First, as discussed *infra*, Plaintiff has not sufficiently alleged any constitutional violation based on mental health treatment he received. Second, Plaintiff has failed to specify any facts indicating the existence of a policy or custom behind the occasions of psychiatric evaluation and hospitalization that he alleges to have occurred. (*See* Am. Compl., Dkt. 25, ¶ 10.) Therefore, for the reasons elaborated in further detail above, Plaintiff fails to state a claim against the City with respect to these claims.

**C. Section 1983 Liability as to Individual NYPD Officers**

As previously stated, Plaintiff has named only New York City entities, not individuals, as defendants in his Amended Complaint. He nevertheless asserts as a cause of action "violations" by "[i]ndividual [d]efendants" whom he does not name relating to mental health treatment he received. (Am. Compl., Dkt. 25, at ECF 6.). Therefore, in liberally construing Plaintiff's *pro se* Amended Complaint, the Court considers the potential liability of individual NYPD officers with whom Plaintiff allegedly interacted in the course of his March 27, 2026 hospitalization. (*See id.* ¶¶ 9, 12). As currently pled, Plaintiff fails to allege sufficient facts to state a viable false arrest claim for that hospitalization.

1. <u>False Arrest Claim for Psychiatric Evaluation</u>

Plaintiff alleges that on March 27, 2026, he was "forcibly removed" from the shelter where he was residing for a mental health evaluation and subsequent "involuntary" hospitalization. (Am. Compl., Dkt. 25, ¶ 12.) The Court construes Plaintiff's account of the event as stating a claim for false arrest.[9] Specifically, the Court construes the events of March 27, 2026 as a claim for false arrest in the mental health context, which is to be distinguished from false arrest for law enforcement purposes. *See Etuk*, 2026 WL 366763, at *11–12 (distinguishing probable cause for

[9] *See Etuk*, 2026 WL 366763, at *10 (finding in a similar case involving a *pro se* plaintiff who was removed from a shelter by NYPD officers for psychiatric evaluation that, "[w]hile Plaintiff may have parsed his claims somewhat differently (*e.g.*, construing his removal as a Fourteenth Amendment procedural due process claim or a violation of his right to travel . . . ), the Court construes them [as a claim for false arrest] in order to raise the strongest claims that Plaintiff's factual allegations can support"); *see also Wright v. Admin. of Child. Servs.*, No. 23-CV-10381 (LTS), 2024 WL 622280, at *4 (S.D.N.Y. Feb. 14, 2024) (similarly construing plaintiff's forced removal from a shelter by NYPD officers for mental health evaluation at a hospital as a false arrest claim); *cf. Mejia v. New York City Health & Hosps. Corp.*, No. 16-CV-9706, 2018 WL 3442977, at *8 (S.D.N.Y. July 17, 2018) (construing plaintiff's involuntary hospitalization claim as a substantive due process violation where named defendants were the hospital and the doctor who made the decision to commit him rather than NYPD officers).

a law enforcement arrest from probable cause for a mental health arrest). Claims for false arrest in both the law enforcement and mental health contexts follow the same four-pronged analysis spelled out above in which the existence of probable cause is the primary issue. The only distinction in the mental health context is that probable cause is defined not as reasonable grounds for believing that the person to be arrested is committing or has committed a crime but instead "reasonable grounds for believing that the person seized is dangerous to [himself] or others." *See id.* (quoting *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003)). Although Plaintiff states that he was removed from the shelter without a written order or warrant, (*see* Am. Compl., Dkt. 25, ¶ 12.), here, as with the January 2026 false arrest claim, Plaintiff has not sufficiently alleged the absence of probable cause. *See Anthony*, 339 F.3d at 137 ("A warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause." (internal quotation marks and citation omitted)). Should Plaintiff seek to again amend his pleadings, he should describe with as much specificity as possible what acts and statements each individual officer directed towards him and include allegations as to what the officers knew or should have known at the time of the arrest that could defeat a claim that there was probable cause to believe that Plaintiff was a danger to himself or others. The Court takes note of Plaintiff's allegations that he "consistently stated that he did not experience hallucinations, did not hear voices, and did not pose a danger to himself or others" as indicating some factual support for a lack of probable cause. (Am. Compl., Dkt. 25, ¶ 12.) Plaintiff does not specify, however, to whom he made these statements or when, and what responses were made to these statements, if any. (*See id.*) At this

stage, the Court therefore dismisses any claim for false arrest in connection with the alleged March 2026 hospitalization.[10]

2. Involuntary Medication

In connection with the same March 2026 hospitalization, Plaintiff alleges that he was administered antipsychotic medications including Haldol and Cogentin against his will, in violation of his "bodily autonomy." (Am. Compl., Dkt. 25, ¶ 12.) He does not, however, attribute the administration of these drugs to anyone who may be deemed a state actor. (*See id.*) Indeed, he does not attribute these actions to anyone at all. (*See id.*) Any Section 1983 claim for involuntary medication therefore fails.

Plaintiff might, however, be able to bring a claim for involuntary medication against the hospital and/or employees thereof, if it is a state agency. *See Mejia v. New York City Health & Hosps. Corp.*, No. 16-CV-9706 (GHW), 2018 WL 3442977, at *5 (S.D.N.Y. July 17, 2018)

---

[10] Plaintiff also alleges that this March 2026 involuntary hospitalization "constituted retaliation for his ongoing complaints regarding conditions at the Samaritan Village shelter." (Am. Compl., Dkt. 23, ¶ 12.) To bring a First Amendment retaliation claim, a plaintiff must allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Even if the Court assumes that Plaintiff is entitled to First Amendment protection for his advocacy on issues relating to conditions at the shelter, that the alleged retaliatory actions were caused by Plaintiff's exercise of his rights, and that Plaintiff's exercise of his First Amendment rights was effectively chilled, Plaintiff fails to adequately connect any state-actor defendants to the alleged retaliation. *See Stone v. City of New York*, No. 22-CV-8615 (LTS), 2022 WL 17822588, at *4 (S.D.N.Y. Dec. 19, 2022). Plaintiff does not name the hospital or medical professionals thereof who decided to commit him to involuntary care. (Am. Compl., Dkt. 23, ¶ 12.) It is therefore unclear whether they are state-actors subject to a Section 1983 action for violating Plaintiff's First Amendment rights. Moreover, without facts to suggest otherwise, it is implausible that the hospital or NYPD officers would be motivated to retaliate against Plaintiff for his comments that were addressed only to Samaritan Village and about which it is not alleged that the NYPD officers had any knowledge. Finally, as has been repeatedly discussed, Samaritan Village and its employees are private actors and therefore cannot be held liable for First Amendment retaliation claims under Section 1983.

(finding Section 1983 liability could attach to a certain hospital defendant and its employees since that hospital was a "public benefit corporation" and therefore a "state agency"). The Fourteenth Amendment protects the right of a competent person to refuse unwanted medical treatment. *See Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"). As a threshold matter, however, Plaintiff must name the hospital or specific employees as defendants and identify them in order to bring a viable Section 1983 claim for involuntary medication against them. Should Plaintiff seek to amend his pleadings to bring a claim against the hospital and/or any employees thereof, he must describe with as much specificity as possible what acts and statements each such employee directed towards him in the course of his medication.

**CONCLUSION**

For the reasons set forth above, the Amended Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

Plaintiff is granted thirty (30) days from the date of this Memorandum & Order to file a Second Amended Complaint as detailed above. Should Plaintiff elect to do so, he will be permitted to pursue only (1) claims against individual NYPD officers related to his January 1, 2026 arrest, and (2) claims against the hospital, its staff, and/or the NYPD for involuntary hospitalization and involuntary medication. The Court will not address any of the other claims already dismissed above, which fail as a matter of law, such as the claims against Samaritan Village and the City of New York.

Plaintiff is advised that any Second Amended Complaint that he elects to file does not simply add to his prior Amended Complaint or submissions and, once it is filed, it completely replaces the Amended Complaint filed before it. The Second Amended Complaint must be

captioned "Second Amended Complaint" and bear the same docket number as this Memorandum & Order: 26-CV-1817 (PKC) (VMS).

Any Second Amended Complaint that Plaintiff elects to file will be reviewed for sufficiency pursuant to 28 U.S.C. § 1915(e)(2)(B). If Plaintiff fails to amend the complaint within thirty (30) days as directed by this Memorandum and Order, judgment dismissing the case shall be entered. No summons shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum & Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: October 23, 2026
Brooklyn, New York